# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

REBECCA E. W.,[1]

        Plaintiff,

vs.

MARTIN O'MALLEY,
Commissioner of Social Security,[2]

        Defendant.

No.  22-CV-1028-CJW-KEM

**REPORT AND
RECOMMENDATION**

———————————————

    Plaintiff Rebecca E. W. seeks judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying her application for disability insurance benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401-434.  Plaintiff argues the administrative law judge (ALJ), Michael Lee Larner, erred by failing to include mental and physical limitations in Plaintiff's residual functional capacity (RFC)[3] determination and by improperly evaluating Plaintiff's fibromyalgia.  I recommend **affirming** the ALJ's decision.

## I.  BACKGROUND

    Plaintiff worked several years as a registered nurse.  AR 190.[4]  She applied for DIB on February 7, 2020, alleging disability since November 14, 2018, due to physical

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

[2] Commissioner of Social Security Martin O'Malley is automatically substituted for his predecessor in accordance with Federal Rule of Civil Procedure 25(d).

[3] RFC is "'what the claimant can still do' despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (quoting *Bradshaw v. Heckler*, 810 F.2d 786, 790 (8th Cir. 1987)).

[4] "AR" refers to the administrative record below, filed at Docs. 7-2 to 7-7.

impairments of arthritis, high blood pressure, chronic obstructive pulmonary disease (COPD), and fibromyalgia; she did not allege any mental impairments or issues with concentration.  AR 13, 45-46.  Her application was denied initially in September 2020 and on reconsideration in December 2020.  AR 45, 52.  At Plaintiff's request, the ALJ held an administrative hearing on November 22, 2021.  AR 13, 26-28, 74.  Both she and a vocational expert (VE) testified at the hearing.  AR 28-44.  The ALJ issued a written opinion on December 2, 2021, following the five-step process outlined in the regulations[5] to determine whether Plaintiff was disabled.  AR 13-21.  The ALJ found that Plaintiff suffered from severe impairments of coronary artery disease, COPD, osteoarthritis, fibromyalgia, hypertension, and obesity, and non-severe depression and anxiety, and that none of Plaintiff's impairments met or equaled applicable listings.  AR 15-17.  The ALJ next determined that Plaintiff had the RFC "to perform the full range of medium work" with no additional limitations, and ultimately concluded that Plaintiff could perform her past relevant work as a general duty nurse and was thus not disabled.  AR 17, 20-21.

The Appeals Council denied Plaintiff's request for review on October 21, 2022 (AR 1-3), making the ALJ's decision that Plaintiff was not disabled the final decision of the Commissioner.[6]  Plaintiff filed a timely complaint in this court on December 19, 2022 (Doc. 1).[7]  The parties briefed the issues (Docs. 10, 13, 14), and the Honorable C.J. Williams, Chief District Judge for the United States District Court for the Northern District of Iowa, referred this case to me for a Report and Recommendation.

---

[5] "During the five-step process, the ALJ considers (1) whether the claimant is gainfully employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets the criteria of any Social Security . . . listings, (4) whether the impairment prevents the claimant from performing past relevant work, and (5) whether the impairment necessarily prevents the claimant from doing any other work."  *Grindley v. Kijakazi*, 9 F.4th 622, 628 (8th Cir. 2021) (quoting *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005)); *see also* **20 C.F.R. §§ 404.1520(a)(4)**.  The burden of persuasion always lies with the claimant to prove disability during steps one through four.  *Goff*, 421 F.3d at 790.

[6] *See* **20 C.F.R. § 404.981**.

[7] *See* **20 C.F.R. § 422.210(c)**.

## II. DISCUSSION

So long as substantial evidence in the record as a whole supports the ALJ's decision, a reviewing court must affirm.[8] "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision."[9] The court "do[es] not reweigh the evidence or review the factual record de novo."[10] If, after reviewing the evidence, "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [ALJ's] findings, [the court] must affirm the decision."[11]

Plaintiff argues that the ALJ erred by failing to include mental and physical limitations in the RFC determination, failing to explain why he did not include such limitations, and by failing to follow the relevant regulation in evaluating Plaintiff's fibromyalgia. Plaintiff specifically argues that the ALJ failed to comply with legal requirements—she does not contest that substantial evidence supports the ALJ's decision. Doc. 14.

### A.    *Limitations in RFC Determination*

Plaintiff argues that the ALJ erred in determining Plaintiff's RFC (at step four) by either failing to include additional limitations or by failing to explain why such limitations were not included. Plaintiff asserts the ALJ should have included a mild limitation in Plaintiff's ability to concentrate, persist, or maintain pace because the ALJ found a mild limitation in this area when determining the severity of Plaintiff's impairments (at step two), where the ALJ found Plaintiff suffered from non-severe depression and anxiety. Plaintiff then maintains that the ALJ should have included greater physical limitations to

---

[8] *Grindley*, 9 F.4th at 627 (quoting *Pickney v. Chater*, 96 F.3d 294, 296 (8th Cir. 1996)); **42 U.S.C. § 405(g)**.

[9] *Kirby v. Astrue*, 500 F.3d 707 (8th Cir. 2007).

[10] *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994).

[11] *Robinson v. Sullivan*, 956 F.2d 836, 838 (8th Cir. 1992).

3

account for Plaintiff's COPD, noting the ALJ acknowledged that this severe impairment caused shortness of breath. Plaintiff argues the ALJ should have limited her to a lower exertional level (below medium) and included environmental limitations (because COPD directly affects the lungs), such as limiting exposure to dust fumes, odors, extreme cold, heat, humidity, or wetness. Plaintiff then argues the ALJ should have obtained testimony from the VE about the limiting effects that Plaintiff's COPD would have on her potential jobs, and that the ALJ failed to address each impairment separately.[12]

An ALJ must consider all of the claimant's credible impairments when determining the claimant's RFC.[13] This includes any non-severe impairments, which "by itself or in combination with other impairments, may still limit a claimant's ability to work."[14] A finding by the ALJ during step two that Plaintiff has mild mental limitations does not necessarily require the ALJ to include such limitations in the RFC determination at step four—the ALJ need only include limitations for impairments that "cause more than a minimal limitation on [the claimant's] ability to do basic work functions."[15]

---

[12] Though Plaintiff cites cases (many from other circuits), Plaintiff makes broad arguments without specifically tying them to the authority cited. For example, Plaintiff provides no authority for her argument that because the ALJ found Plaintiff's COPD constituted a severe impairment, the ALJ had to impose specific limitations tied only to that impairment in the RFC determination.

[13] *Clevenger v. Colvin*, No. 15-CV-6087-SJ-DGK-SSA, 2016 WL 3911982, at *2 (W.D. Mo. July 15, 2016).

[14] *Ollila v. Colvin*, No. 13-3345-CV-S-DGK-SSA, 2014 WL 7238128, at *3 (W.D. Mo. Dec. 17, 2014) (quoting then-**20 C.F.R. § 404.1521(a)**); *accord* **20 C.F.R. § 404.1523(c)** (providing that during step four, an ALJ must consider both severe and non-severe impairments from step two in determining a claimant's work-related limitations).

[15] *Taylor v. Berryhill*, No. 4:17-CV-01050-DGK-SSA, 2018 WL 5410977, at *3 (W.D. Mo. Oct. 29, 2018); *see also Johnson v. Berryhill*, No. 4:17-CV-0416-DGK-SSA, 2018 WL 2336297, at * (W.D. Mo. May 23, 2018) (finding that "[b]ecause the ALJ found [the claimant] did not suffer from a severe mental impairment, *i.e.*, that her mental symptoms did not cause more than a minimal limitation in her ability to do basic work activities, he did not need to find any mental limitations on the RFC were necessary"). Indeed, an ALJ need not include even moderate limitations caused by severe impairments. *See Mangano v. Berryhill*, No. 16-CV-147-KEM, 2017 WL 4322821, at *6 (N.D. Iowa Sept. 28, 2017) (collecting cases and holding

Plaintiff relies on cases reversing an ALJ's decision for a failure to either include, or explain not including, mild mental limitations from step two in the RFC determination at step four.[16] Other courts, however, have found that an ALJ's failure to translate mild limitations at step two into RFC limitations at step four does not require reversal.[17] I find the latter line of cases more persuasive when considering this case.[18] The regulations provide that if the Social Security Administration "rate[s] the degrees of your limitation as 'none' or 'mild' [at step two,] we will generally conclude that your impairment[] is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities."[19] This regulation suggests that a mild limitation at step two usually does not translate to a "more than minimal limitation in" the claimant's ability to work and that minimal limitations need not be included in the RFC. In addition, the ALJ here, as in *Crissey v. Saul*, "explicitly recognized" the

_____

that "[a] moderate limitation in concentration, persistence, or pace . . . may not result in significant functional limitation that needs to be incorporated into the RFC"); *see also Beasley v. Colvin*, 520 F. App'x 748, 754 (10th Cir. 2013) ("The ALJ was under no obligation to include limitations in social functioning in [claimant's] RFC based solely on his finding that she had 'moderate difficulties' in social functioning as part of the distinct step-three analysis.").

[16] *See Vicky R. v. Saul*, No. 19-cv-2530 (ADM/ECW), 2021 WL 536297, at *14 (D. Minn. Jan. 28, 2021), *report and recommendation adopted*, 2021 WL 533685 (Feb. 12, 2021) (clear-error review); *Martinette v. Acting Commissioner, Social Security Administration*, No. 4:18-00533-CV-RK, 2019 WL 2914098, at *2 (W.D. Mo. July 8, 2019); *Ollila*, 2014 WL 7238128 at *3. Plaintiff also argues that *Scott v. Berryhill,* 855 F.3d 853, 857 (8th Cir. 2017), supports reversal. *See* Doc. 14 at 6 (arguing that the court there "held that this exact situation constituted legal error"). Plaintiff's reliance is misplaced, as the court in *Scott* affirmed the ALJ's decision (finding the ALJ's hypothetical to a VE adequately captured moderate limitations in concentration, persistence, or pace).

[17] *See* note 13*, supra*; *Crissey v. Saul*, No. 4:20-CV-00476-WJE, 2021 WL 2624514, at *3-4 (W.D. Mo. June 25, 2021) (collecting cases) (declining to follow *Ollila*).

[18] Other cases Plaintiff cites do not support reversal or remand in this case. *See Halverson v. Astrue*, 600 F.3d 922, 929-34 (8th Cir. 2010) (stating an ALJ's decision must adhere to legal requirements in addition to being supported by substantial evidence, but addressing only whether substantial evidence supported the ALJ's decision and not legal error).

[19] **20 C.F.R. § 404.1520a(d)(1)**.

different analysis used at steps two and four of the process and explained that the determined RFC "reflects the degree of limitation [the ALJ] found" during step two.[20] AR 16. The ALJ here also added that the analysis at step four "requires a more detailed assessment." AR 16.

In explaining the RFC determination, the ALJ also discussed and found persuasive the conclusions of the state agency consultants—that Plaintiff was limited to performing medium work but that the record did not support any additional limitations.[21] AR 20. The ALJ noted that Plaintiff "alleged she was not able to work because of arthritis, high blood pressure, [COPD], and fibromyalgia . . . [that caused] leg pain resulting in falls and shortness of breath"—none of which involved mental impairments or limitations.[22] AR 17. In determining a claimant's limitations, an ALJ may consider that the claimant failed to allege a mental impairment in seeking disability benefits and never sought medical treatment.[23] In addition, during step two, the ALJ discussed the medical evidence

---

[20] *See Crissey*, 2021 WL 2624514, at *4.

[21] AR 16, 47, 55 (state agency consultants opined the record did not support mental limitations). *Cf. Vicky R.*, 2021 WL 536297, at *1, 13-14 (state agency consultants opined claimant had mild to moderate mental limitations; claimant there also alleged disability, in part, based on mental health issues); *Miller v. Colvin*, 114 F. Supp. 3d 741, 747, 765, 779-80 (D.S.D. 2015) (adopting report and recommendation) (claimant alleged disability based on depression as well as physical impairments; and court held ALJ erred in failing to give treating physician's medical opinion controlling weight, which opined claimant's "pain symptoms would interfere with the amount of concentration and attention necessary even for unskilled work and that she could tolerate only low stress work"); *but see Mark E. v. Kijakazi*, No. 20-CV-2047 (PAM/JFD), 2021 WL 6066260, at *1-2, *10 (D. Minn. Dec. 7, 2021) (claimant's initial application sought disability benefits based only on physical impairments; consultative examiner's medical opinion found mental RFC limitations, however).

[22] *See* AR 35, 189, 220 (Plaintiff's application and testimony included no mention of any mental limitations), 220-21 (Plaintiff reported she did well with paying attention, following instructions, and handling stress or changes in routine).

[23] *Partee v. Astrue*, 638 F.3d 860, 864 (8th Cir. 2011) (noting ALJ may properly consider, among other things, that claimant failed to allege mental impairment when seeking disability).

6

here.[24]  I find the ALJ provided a sufficient basis to understand why no mental limitations were included in the RFC determination and that substantial evidence supports that determination.

As for physical limitations, the ALJ's opinion addressed the basis for the RFC determination.  Plaintiff challenges the thoroughness of the ALJ's decision (Plaintiff argues it was "muddled" and failed to specifically discuss the impact of Plaintiff's COPD), but "a deficiency in opinion-writing is not a sufficient reason for setting aside an administrative finding where the deficiency has no practical effect on the outcome of the case."[25]

Plaintiff argues the ALJ's physical RFC should have included environmental limitations.  But Plaintiff herself indicated her shortness of breath was caused by physical exertion—*not environmental factors*.  AR 35, 37 (testified could only walk a short way

---

[24] Plaintiff took medication for depression, but her condition was stable, examinations were unremarkable, and she reported in January 2021 that her depression was under control.  AR 16, 302, 316, 365, 368, 378, 386.  She reported increased stress in April 2021 due to her mother's death, but by June 2021, she had stopped taking medication for depression.  AR 16, 302, 365, 380.  This evidence supports the ALJ's opinion.  In addition, Plaintiff's activities of daily living provide additional support—Plaintiff could care for her grandchildren and pets, shop by computer, manage finances, watch tv, and complete puzzles daily.  AR 19, 35, 216-19.  Though the ALJ could have provided additional explanation, the court is able to determine the basis for the ALJ's decision to not include any mental limitations in the RFC and finds that that conclusion is supported by substantial evidence.

[25] ***Sloan v. Saul***, 933 F.3d 946, (8th Cir. 2019) (affirming ALJ's decision because "[t]he path of the agency's reasoning is clear enough to allow for appropriate judicial review," and the decision was supported by substantial evidence, even though "the ALJ explained only that his conclusion 'was based on the credible testimony of the vocational expert'"); *cf. **Ollila***, 2014 WL 7238128 at *3-4 (court could not tell why ALJ did not include mental limitations in the RFC after ALJ's discussion of treatment records and medical opinions); *see **Martinette***, 2019 WL 2914098, at *1-2 (remanding, in context of evaluating substantial evidence based on lack of sufficient record about claimant's physical limitations with direction to include mild mental limitations or explain their exclusion (but providing no further discussion on that issue)); ***Ollila***, 2014 WL 7238128, at *3 (noting ALJ's opinion credited a medical opinion that claimant had mild limitations in maintaining social functioning and concentration, persistence, or pace, but provided no explanation for not including any such limitations in the RFC).

without resting—caused by pain and also had shortness of breath); AR 215 (reported in function report that increased pain, which affected ability to sit, stand, and walk, also caused shortness of breath due to her COPD). In addition, any error may be harmless as the Dictionary of Occupational Titles (DOT) shows that nursing does not involve conditions that would require environmental limitations (as does common sense—nurses generally work in medical facilities and not under conditions of extreme temperatures, dust, and the like).[26]

Plaintiff also argues the ALJ should have imposed greater limitations based on Plaintiff's testimony that she could only walk 30 feet before becoming short of breath.[27] The ALJ makes clear, however, that he did not fully credit Plaintiff's statements about the limiting effects that her COPD caused. AR 19. The ALJ cited the applicable factors[28] and discussed how the medical evidence contradicted Plaintiff's allegations about the severity of her symptoms, including that Plaintiff continued to smoke, was stable and had normal examinations, and received minimal treatment.[29] AR 18-20. The ALJ summarized the medical evidence, commenting that Plaintiff received minimal treatment for her conditions—medication management and no referrals to any specialists.[30] AR 17-

---

[26] *See* **DOT 075.364-010 (Nurse, General Duty)**.

[27] *See* AR 36-37.

[28] When evaluating the credibility of a claimant's subjective complaints, the ALJ must consider: "(1) the claimant's daily activities; (2) the duration, frequency and intensity of the pain; (3) dosage, effectiveness, and side effects of medication; (4) precipitating and aggravating factors; and (5) functional restrictions." ***Black v. Apfel***, 143 F.3d 383, 386 (8th Cir. 1998); *accord* ***Polaski v. Heckler***, 739 F.2d 1320, 1321-22 (8th Cir. 1984), *vacated*, 476 U.S. 1167 (1986), *reinstated*, 804 F.2d 456 (8th Cir. 1986).

[29] *See* AR 275, 279, 308, 312-13, 316, 322, 328, 342, 346, 350, 356, 367, 378, 381, 385 (normal respiratory examinations); AR 311, 315, 321, 327, 345, 380, 384 (denied shortness of breath during visits); *see also* AR 276, 279, 351 (encouraged to be more active); AR 275, 277, 285 (treatment sought unrelated to COPD or respiratory symptoms); *but see* AR 300 (coughing and wheezing noted during March 2020 visit).

[30] *See* AR 302, 306, 309, 319, 322 (Plaintiff prescribed inhaler and nebulizer but no other treatment for COPD, other than addition of antibiotic and prednisone during exacerbations).

18. "A claimant's allegations of disabling pain may be [discounted based on] evidence that the claimant has received minimal medical treatment . . . ."[31] The ALJ also noted that Plaintiff continued to smoke despite her COPD and reported shortness of breath and coughing, noting repeated recommendations from medical providers to stop smoking.[32] AR 18. An ALJ may consider failure to stop smoking when evaluating claimant's reported impairments caused by COPD.[33] The ALJ also considered Plaintiff's activities of daily living and found them inconsistent with her reported limitations.[34] AR 19. Even if not very active, a claimant's ability "to complete chores at home when asked" may be considered in discounting a claimant's statements about COPD symptoms.[35] Finally, the ALJ discussed the medical-opinion evidence (limiting Plaintiff to medium work with no other limitations), which the ALJ found persuasive and consistent with the other evidence.

---

[31] *Singh v. Apfel*, 222 F.3d 448, 453 (8th Cir. 2000); *see also Smith v. Shalala*, 987 F.2d 1371, 1374-75 (8th Cir. 1993) (noting ALJ may consider, among other things, limited times claimant sought treatment and conservative nature of treatment when evaluating the credibility of claimant's statements of pain); *Robinson v. Sullivan*, 956 F.2d at 840.

[32] *See* AR 277, 311, 329, 354-55 (Plaintiff had smoked for 30 years, smoked ½-¾ pack of cigarettes per day, and was described as a heavy smoker); AR 276, 279, 351, 356 ("[s]trongly" encouraged to stop smoking); AR 300-02, 318, 330, 337-38, 372 (continued to smoke with no desire to quit during visits for shortness of breath and despite provider recommendations); AR 306, 309, 313, 317, 343, 347, 368, 379, 381, 386 (recommendations to quit smoking made during medication refill visits).

[33] *See Mouser v. Astrue*, 545 F.3d 634, 638 (8th Cir. 2008).

[34] *See* AR 216-18 (Plaintiff could do light to medium housework and cooking, could take care of pets, grandchildren, and herself; and could shop in stores); *see also* AR 355 (medical record shows Plaintiff had moderate activity level in December 2017); AR 330, 333 (Plaintiff was going goose hunting in South Dakota in March 2018, despite COPD exacerbation and acute bronchitis); *but see* AR 354 (reported in December 2017 that exertion caused severe pain from her hips to calf (for past 13 years and worsening) and made it so she could not walk much).

[35] *Mouser*, 545 F.3d at 638; *see also Milam v. Colvin*, 794 F.3d 978, 980, 982, 984-85 (8th Cir. 2015) (ability to cook, do laundry, take care of personal hygiene, and shop for groceries, "particularly when considered in conjunction with the medical record[s]"—which showed a conservative treatment history, normal objective test results, and a failure to seek treatment for long periods—supported the ALJ's decision to not fully credit claimant's subjective complaints of disabling pain).

AR 20. Courts must "defer to an ALJ's credibility finding as long as the 'ALJ explicitly discredits a claimant's testimony and gives a good reason for doing so.'"[36]

A court looks "to ensure that an ALJ does not disregard evidence or ignore potential limitations, but [the court does] not require an ALJ to mechanically list and reject every possible limitation."[37] There is no indication in this case that the ALJ disregarded evidence or ignored potential limitations. I find the ALJ adequately explained the basis for the RFC determination, using applicable factors. Though uncontested, I also conclude that substantial evidence supports the ALJ's decision, based on the record cited above.

### B. Evaluation of Plaintiff's Fibromyalgia

Plaintiff argues the ALJ failed to follow the applicable Social Security Ruling in evaluating the effects Plaintiff's fibromyalgia had on her ability to work. Social Security Ruling (SSR) 12-2p (Evaluation of Fibromyalgia) focuses on how to determine whether fibromyalgia constitutes a medically determinable impairment, which is not an issue here, as the ALJ included fibromyalgia as a severe impairment. SSR 12-2p provides that once fibromyalgia is determined to be a severe impairment, the ALJ must:

> evaluate the intensity and persistence of the person's pain or any other symptoms and determine the extent to which the symptoms limit the person's capacity for work. If objective medical evidence does not substantiate the person's statements about the intensity, persistence, and functionally limiting effects of symptoms, we consider all of the evidence in the case record, including the person's daily activities, medications, or other treatments the person uses, or has used, to alleviate symptoms; the nature and frequency of the person's attempts to obtain

---

[36] ***Schultz v. Astrue***, 479 F.3d 979, 983 (8th Cir. 2007) (quoting ***Hogan v. Apfel***, 239 F.3d 958, 962 (8th Cir. 2001)); *see also* ***Robinson***, 956 F.2d at 841 (if ALJ does not fully credit claimant's subjective complaints "and explicitly gives good reasons for so doing, [the court is] bound by that judgment unless it is not supported by substantial evidence on the record as a whole").

[37] ***McCoy v. Astrue***, 648 F.3d 605, 615 (8th Cir. 2011) (finding sufficient ALJ's decision that "identified proper legal framework" and indicated the ALJ considered all credible limitations and included such limitations in the hypothetical to the VE; the court noted "[i]n this context, we conclude the ALJ implicitly made a finding that [the claimant] did not suffer from [additional] limitations," and thus found it unnecessary to remand for the ALJ to make explicit findings).

medical treatment for symptoms; and statements by other people about the person's symptoms.[38]

Plaintiff argues the ALJ erred by failing to consider these factors, and instead, relied solely on objective medical evidence. The ALJ's decision, however, shows that he considered the relevant factors. Though the ALJ did not specifically cite SR 12-2p, he listed the applicable standard used to evaluate Plaintiff's claims, including the relevant factors in evaluating Plaintiff's statements about the effect her impairments have on her ability to function. AR 17, 19.[39] I find the ALJ analyzed the relevant evidence and factors, and that substantial evidence supports the ALJ's conclusions.

The ALJ acknowledged that Plaintiff alleged her leg pain caused falls. AR 17; *see also* AR 35 (Plaintiff testified her main issue was trouble with her legs and back, specifically having a lot of pain); AR 209-10, 215-20 (Plaintiff reported in function reports that pain caused constant, moderate to severe pain that made it difficult for her to walk or stand and caused issues with lifting, bending, reaching, sitting, kneeling, and climbing stairs). The ALJ then summarized medical records, noting that Plaintiff gave no indication of difficulties with sitting, standing, or lifting; that her chronic conditions were stable; and that examinations were within normal limits. AR 17-18; *see* AR 275, 279, 334, 350 (unremarkable physical examinations).[40] The ALJ discussed the minimal nature of Plaintiff's treatment, which involved medication and periodic medication management visits and no referrals to any specialists.[41] AR 17-18. The medical records show that Plaintiff's only treatment for fibromyalgia consisted of periodic medication

---

[38] **SSR 12-2p**, 77 Fed. Reg. 43640, 43643 (July 25, 2012).

[39] The ALJ acknowledge that in evaluating an impairment that causes pain, that he "must consider other evidence in the record" in addition to the objective medical evidence. AR 17.

[40] *Grindley*, 9 F.4th at 629 (holding that "it was not improper for the ALJ to highlight [claimant's] 'normal' exam results," despite claimant's fibromyalgia diagnosis).

[41] *See Pirtle v. Astrue*, 479 F.3d 931, 935 (8th Cir. 2007) (finding ALJ properly considered the severity of the claimant's fibromyalgia when ALJ discussed sporadic and minimal nature of treatment).

management visits—two to four times per year between November 2017 and June 2021. AR 343, 345 (November and December 2017); AR 321, 327 (June and September 2018), AR 304, 307, 311, 315 (January, May, August, and December 2019); AR 366, 389 (July and October 2020); AR 377, 380, 384 (January, April, and June 2021). In just under half of these visits, Plaintiff indicated that she felt fine or really good, or else her fibromyalgia symptoms were not discussed at all. *Id.* During other medical visits (for other issues), Plaintiff did not mention any pain or issues related to her fibromyalgia. AR 302, 318, 324 (other than cold symptoms, she reported "doing okay"), 330, 333, 336, 370, 387. Plaintiff's providers continued to prescribe the same dosage of gabapentin to treat her fibromyalgia, with one recommendation to use moist heat in August 2019. AR 286, 302, 306, 309, 317, 323, 329, 335, 368, 379, 382, 386, 391; *see also* AR 210 (Plaintiff reported using heating pads to help with pain), 302 (Plaintiff's osteoarthritis treated with Nabumetone), 379 (given steroid injection for osteoarthritis after complaining of pain and body aches). Plaintiff's providers also recommended she be more active. AR 279, 351, 356. The ALJ properly considered Plaintiff's activities of daily living (as Plaintiff acknowledged). Doc. 10 at 19; AR 19; *see* AR 216-18 (Plaintiff reported ability to perform light and medium housework—laundry, dishes, cleaning floors, light dusting, making bed, cooking, caring for pets, and shopping in stores).[42] Finally, the ALJ considered the medical opinions in the record and explained the weight given to those opinions. AR 18, 20; *see* AR 45-58 (state agency consultant opinions).

---

[42] *See **Grindley***, 9 F.4th at 630-31 (recognizing that "in the context of a fibromyalgia case, . . . the ability to engage in activities such as cooking, cleaning, and hobbies[] does not constitute substantial evidence of the ability to" work; but noting ALJ could consider claimant's minimal issues with personal care along with other factors when considering weight to assign claimant's subjective statements) (quoting ***Brosnahan v. Barnhart***, 336 F.3d 671, 677 (8th Cir. 2003)); ***Anderson v. Berryhill***, No. 16-CV-03105-CJW, 2017 WL 2196750, at *8 (N.D. Iowa May 18, 2017) (ALJ may discount claimant's allegations about fibromyalgia "in part based upon the claimant's daily activities, including the ability to cook, clean, drive, and take care of personal grooming and hygiene").

Based on all of the evidence, the ALJ did not fully credit Plaintiff's statements about the extent of her symptoms and their limiting effects. AR 19.

The ALJ properly considered the applicable factors, and substantial evidence supports the ALJ's determination that Plaintiff could perform medium exertional work.

### III.  CONCLUSION

I respectfully recommend **affirming** the decision of the Social Security Administration and that judgment be entered in favor of the Commissioner.

Objections to this Report and Recommendation must be filed within fourteen days of service in accordance with 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b). Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections.[43] Failure to object to the Report and Recommendation waives the right to *de novo* review by the district court of any portion of the Report and Recommendation, as well as the right to appeal from the findings of fact contained therein.[44]

**DONE AND ENTERED** on March 6, 2024.

Kelly K.E. Mahoney
Chief United States Magistrate Judge
Northern District of Iowa

---

[43] **Fed. R. Civ. P. 72**.

[44] *See United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

13